Good morning, Your Honors. I'm Joel Golden, and I represent Charles Andrew Williams in this case. I would like to focus on the Eighth Amendment. I believe that's the crux of our argument in the brief and the crux of what I brought this appeal for. And I just want to do, from a historical standpoint, put this case in perspective. And I would like the court to focus on, let's say, the last decade from the year 2000 to the present and look at the changes that have been made in treatment of juvenile offenders. Basically, in 2002, the U.S. Supreme Court determined in Wilber v. Simmons that, well, the issue before them was whether or not sentencing a juvenile to execution was a violation of the Eighth Amendment's cruel and unusual punishment. They determined that it was, in fact, such a violation. The next case that's relevant is Graham v. Florida, where the question in front of the U.S. Supreme Court was whether sentencing a juvenile to life without the possibility of parole was, in fact, a violation of the Eighth Amendment's prohibition against cruel and unusual punishment. And, again, they answered yes. And in the context of those cases was also the case of Atkins v. Virginia, where the Supreme Court held that a mentally retarded individual could not be executed. And the rationale of all these cases, really, as far as the juveniles go, is based on the difference between a juvenile and an adult. Remember, before the year 2002, we were executing juveniles, or at least was not a violation of the Eighth Amendment to do that. I think what's developed over the last decade is scientific knowledge, which has basically shown that juveniles do not have the mental maturity of an adult. I think that everybody knows that. It's difficult for them to control their impulses. They are lacking in ability to make judgments. And what the court has done is it's looked at the individual, the juvenile, and said that such a person really is not as culpable as an adult. Even when tried as an adult? Even when what? Even when tried as an adult? Well, even when, I don't, yes, I don't, my view on that is it doesn't matter whether they're tried as an adult or tried as a juvenile. The court looked at the juvenile himself. And in this case, let's remember that Andy Williams had just turned 15. He was 14 and he was one month into his 15th year when he committed these offenses. So there is a holding in... He took a gun to a school and killed two people and wounded several others, right? That is true. One of them could easily be described as an execution. The guy was begging for his life, right? Right, but I'm not obviously defending his actions and they're heinous and very extreme. But the situation is that the court did not look at him as an individual, as a juvenile, and his attorneys did not examine or retain an expert to determine all of these factors that were cited by the U.S. Supreme Court in Roper. Mr. Golden, in determining whether he could be tried as an adult, doesn't the court consider just those factors that you're now mentioning and find that this particular individual should be tried as an adult, although he is a juvenile? They didn't in this case because Proposition 21 had passed. Before Proposition 21, there was a requirement that juveniles be examined for fitness to be tried as a juvenile or as an adult, and it was put in front of the trial judge to make that determination. Since Proposition 21 passed, the prosecutor had complete discretion as to whether or not they're going to try the individual as an adult or a juvenile. Is it your position that that's an unconstitutional distribution of judicial power? Well, I mean, you don't like it, but you may not like it, but is it unconstitutional for the people of the state of California to decide that the decision whether to try someone as a juvenile should be shifted from the judicial branch to the executive branch? It's been held to be constitutional. It's been challenged. And under those circumstances, that issue of trying him as an adult is one issue, and that was decided against him. His attorneys did appeal that, and they lost. But the issue I'm addressing is, okay, what's the sentence? If, in fact, the adult court had jurisdiction and he had to stay in that court for the determination, then we get to the point in time where he gets sentenced. And that's where all these factors should have been considered and should have been looked at in regard to what the appropriate sentence would be for him. Remember, he got 25 years to life on two consecutive sentences on two counts, and everything else ran concurrent. He was 15 at that time. Under the best of circumstances, he will get out when he's 65 years old, 50 years from when he was sentenced. And this is a AEDPA case, correct? Yes. What is the clearly established federal case from the Supreme Court which you claim the lower court disregarded? Is it Graham? I'm not surprised by that question, Your Honor. I think it's an appropriate question. In Roper, well, basically, there hasn't been a decision by the U.S. Supreme Court regarding this issue. So is your answer to Judge Vea, there is no clear Supreme Court precedent on this issue? Well, my answer is that in the Roper case, one can infer, and in the Graham case, that the individual as a juvenile needs to be looked at himself, not just as all juveniles. But I think that those cases have opened the door for this question. And I believe that the question in this case is whether or not a juvenile, the age of 15, whether or not it's a violation of the Eighth Amendment to sentence him to two consecutive 25-year-to-life sentences, and one of them for enhancement based on using a firearm. I think that if you look at the U.S. Supreme Court cases that I've cited, you can see that the court is focused more now on the actual culpability of the defendant in front of the court than they are necessarily on what the appropriate sentence is, although that's their question. But both these cases, Roper and Graham, are very interesting cases, and they're also showing a real change in direction on how juveniles are being treated. And I believe in this case that if one looks at Andy Williams and looks at what was going on in his mind at that time, and looks at the MRI that was done of him, there are experts, as the AMA filed an amicus brief in Roper, full of scientific experts showing the frontal lobe of the brain and showing that there just isn't enough maturity there to hold a juvenile as accountable as an adult, even for such a crime as Andy Williams ended up committing in this case. I take it your position is that we should analogize from the facts in Roper and Graham and find that the principles stated therein are applicable here. Yes, that's what I'm saying. The holding, of course, is different because respectively they involve the death penalty and life without the possibility of parole. But what is the next most serious sentence one can get? And that would be the number of years. Is he eligible for parole? Not until he's served the 50 years. Not until he's served 50. Not until he's served 50 years, is that what you said? Pardon me, I'm sorry. Not until he's served how many years? 50. 50. Yeah, so he's 65. 65. Had he been prosecuted as a juvenile, what would the sentence have been? I believe he would have been out at the age of 25, which is about where he is right now. And also I just need to let the court know that I met him when he was 15 and he was about this tall, and now he's like 6'4". And as I go back to the prison to visit him, as I observe the physical change in his stature, I could not help but think what had changed also in his intellect and in his maturity. And that's what this case is about. It's about what is the appropriate sentence. Well, have we learned since the time these crimes were committed that the juvenile mind doesn't reach maturity until about the age of 25? That's right. He's mature now. He's grown quite a lot in the last 10 years. But that's the point. He deserves. Is that the scientifically accepted view today? It is. It's in the, there's an AMA. I can't hear you. It's been cited as, it is scientifically found that that's true. I just want the younger people in the room to understand when their brains are fully developed. I'd like to reserve the next two minutes, if I might, for a short autumn. I guess I have a couple minutes left. Thank you. Are there any other questions? All right. Thank you very much. Good morning. Deputy Attorney General Matt Mulford, on behalf of the warden. May it please the court. I'm happy to discuss the various Ed provisions that may apply to this case, including the certificate of appealability requirement in 2253C, the evidentiary hearing bar in 2254E2, and whether the relitigation bar of Harrington v. Richter in 2254D apply to all the claims. The counsel is focused on the Eighth Amendment issue. The Eighth Amendment issue is clearly subject to the Richter and 2254D relitigation bar, but does apply to this claim. The district court found that in the excerpts of record at pages 54 through 58. The California Court of Appeal addressed that issue in its opinion on direct appeal. Why don't you, if you wouldn't mind, focus on your opposing counsel's Roper-slash-Graham arguments. Those cases don't help him because they are factually inapposite. Mr. Williams was 15 years at the time he shot and killed two schoolmates and wounded 13 other people at school with a gun. When he told other people beforehand that he had planned to take the gun to school, when he reloaded the gun four times while doing the shooting rampage, while talking to a student that he had shot and was lying bleeding on the floor, shut up, he told the student shut up when the student asked him what he was doing and why he'd been shot. This is one of the most serious crimes seen. His behavior is reprehensible. He deserves the punishment he got. He is eligible for parole. The trial court took into consideration the very factors we've been discussing about juvenile lines and immaturity. The court functionally punished him only for the first shot he fired, the shot that killed one student, shot him in the back of the neck, and he died. Another student was shot and killed. Mr. Williams has not been punished for that crime at all. Well, Mr. Mulford, what I'm having trouble with is if Mr. Golden is correct, and I haven't read the case carefully in Graham, that it's a cruel and unusual punishment to punish a juvenile to life without possibility of parole, LWOP. Why doesn't that state a principle which, through analogy, would be applicable to Mr. Williams' situation of 50 years without parole? I think there are three reasons. The first is that Graham specifically exempts juveniles who commit homicide from its rule. So it is true that it says juveniles who commit crimes less than homicide cannot be subject to life without the possibility of parole. Here, Mr. Williams committed two homicides. What was the crime in Graham that got him life without parole? I'm sorry, I don't recall. I can't find. But Justice Thomas' concurrence makes clear that the holding in Graham does not apply to homicide crimes. That's a concurrence, but it's not the majority. It is a concurrence, but I believe that it's accurate. I'd be happy to further brief that. But it doesn't say that in the body of the majority opinion. I think it does, but I can't. I'm sorry. I'd be happy to specifically brief that this is a concern. But there are two other reasons why Graham doesn't help. Mr. Williams will be eligible for parole. So if Graham applies to life without the possibility of parole, Mr. Williams will be eligible. He'd have to serve 50 years. But at age 65, he becomes parole eligible. And the third reason that Graham does not help him is that, again, this is an ethic case. And so his argument by analogy is expressly precluded by the Harrington v. Richter bar of 2254E. This court is limited. Federal courts are limited to the state of the law at the time Mr. Williams' case became final in state court. That occurred before Brogan. That occurred before Graham. And Graham occurred after the crime. Yes, much after. So those cases provide absolutely no basis for habeas relief, even if they were on point, which they are not. I should also mention that the Supreme Court has set for a calendar next month two other cases that, again, under the AEDPA will not apply because they will not be decided until after finality. But, again, the numbers are Miller v. Alabama, 10-9646. It's going to be argued in March. And Jackson v. Hobbs, the Supreme Court number 10-9647, that focus on 14-year-olds and whether life without the possibility of parole is acceptable in a homicide case. But, again, these cases will necessarily be decided after Mr. Williams' case is final and cannot help him. And, factually, they appear to be distinguishable as well because they are dealing with 14-year-olds and the crimes of Mr. Williams' 15. Well, you'll fill out one of our gum sheets with those citations? Sure, absolutely, Your Honor. Yes, I'd be happy to. Again, they haven't been decided yet. They are just on calendar in the Supreme Court next month. All right. Do that anyway. I will do that, Your Honor. But the bottom line is that he committed crimes, the most serious crimes, knowing what he was doing, admitting what he was doing, taking responsibility for what he was doing, and is getting a punishment that allows him to be held liable for parole. We cannot ask for anything more than that. Unless there are further questions, we would ask this Court to affirm the district court's judgment. Thank you. Well, he could have, I mean, wouldn't a sentence that would permit the state authorities to consider his mental condition and maturity at a later date and then decide whether he would be eligible for parole? Wouldn't that take care of the problem? Well, I disagree that there is a problem. He will become eligible for parole, and the legislature is certainly... Tell me why it wouldn't take care of the problem. Again, I respectfully disagree that there is a problem. Well, whatever it is. His maturity... Let's say that now, 10 years later, he is more mature 20 years from now, and he's been a model prisoner, and the state authorities determine, the parole board would determine that he's eligible for release under certain restrictions. I'm sure that's possible. It's possible that may happen. What would that accomplish that keeping him from being eligible for parole for 50 years wouldn't accomplish? Well, falling back on the basic principles of criminal law. We punish to deter crime. Others need to see what happens. The basic principle of criminal law, the punishment fit to crime, huh? It does, and in this case, it does. That's why we have some people that cheat people out of billions of dollars, pay a big fine and end up in nice places, and the welfare mother goes to prison. Well, that may be regrettable, but that's a decision for the legislature. Here, the legislature has decided that the punishment for shooting somebody with a gun is 50 years. That's appropriate. Thank you. And I don't condone what he did. I'm just asking these questions, and it was a horrible situation. Thank you. Well, he's got a defense lawyer that reminds me of Clarence Darrell. Mr. Golden, concentrate on the three distinctions which Mr. Mulford put to the Graham case being applied here. Okay, I will. Number one, that the Graham case exempts from its ruling cases of homicide. Is that correct? That is correct. Number two, that Williams, after all, will be eligible for parole at age 65. That's correct. That's correct. And three, that under Harrington versus Richter, EDPA cases that are in violation of the federal constitution have to exist at the time of the crime to be eligible, to be citable for EDPA purposes. I'm not sure that's correct in this situation. For instance, let's just say there's a juvenile, 15-year-old, who had been sentenced to the death penalty. And now these cases, Roper and Graham come along, or at least Roper, says you can't execute a juvenile. It necessarily has to be retroactive because it's a constitutional issue. It's the Eighth Amendment. If it's cruel and unusual punishment in 2002, it had to have been cruel and unusual punishment whenever this hypothetical individual I've stated was sentenced. I think some serious constitutional issues such as cruel and unusual punishment, especially perhaps. So you read an exception in Harrington versus Richter, which is if it's a serious enough violation of a constitutional provision, it has to be retroactive on a common sense basis that Roper's you couldn't execute a person now who had committed his crime before Roper's after Roper's came down. That's what I think. This is not a bad thought. Thank you. I appreciate that. And I don't think Roper said whether or not it was retroactive. I mean, the other two issues. Yes, it was. He will be eligible for parole at the age of 65. On the other issue of whether or not the court was. Well, I guess the first the first question you asked me was what. Do you agree that under Graham, the ruling attaches only to crimes other than homicide? That's that's correct. Justice Thomas was correct in his concurrence in that case. It was actually the ruling says in a non homicide, you know, you cannot sentence a juvenile to life without the possibility of parole. But what they didn't answer was whether or not in a non homicide case or in a homicide. Right. I mean, that that's that's a formidable barrier under it. Yes, that was not answered. Thank you. Thank you very much for your argument.
judges: Pregerson, Hawkins, Bea